IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANA INGRAM,

        Plaintiff,                        No. CIV S-05-1024 FCD CMK

    vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.               FINDINGS & RECOMMENDATIONS
_____/

        Plaintiff, Dana Ingram, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying her application for Social Security Income (SSI) under the provisions of Title II of the Social Security Act. The parties have filed cross motions for summary judgment. For the reasons discussed below, the court recommends plaintiff's motion for summary judgment or remand be denied and the Commissioner's cross motion for summary judgment be granted.

/////

/////

/////

1

I. Background

Plaintiff protectively filed her application for SSI on November 5, 2002. Plaintiff formally filed her application on December 2, 2002, based on disability due to epilepsy, depression, memory limitations, arthritis, asthma, and allergies.[1] In her application, plaintiff claimed that her impairments began on January 1, 2001. Plaintiff has the equivalent of a high school education and previously worked as a cashier and counter clerk.

Plaintiff's application was denied initially and upon reconsideration. A hearing was held before administrative law judge (ALJ) James M. Kaplan on April 26, 2004. Plaintiff was represented by counsel at her hearing. Plaintiff testified at the hearing, as did vocational expert Stephen Davis.

In his July 26, 2004 decision, the ALJ made the following findings. He determined that plaintiff has not engaged in gainful activity since January 1, 2001. The ALJ found that plaintiff suffered severe impairments from seizure disorder, asthma and depression. He concluded that her hand and memory problems were non-severe. He found that plaintiff did not have any of the related clinical findings so as to meet or equal the level of severity in the listings in Appendix I, Subpart P, Regulations No. 4. Substance addiction was not a contributing material factor to the ALJ's disability determination. The ALJ found that plaintiff's subjective complaints were not fully credible and that she had the residual functional capacity to engage in a range of simple, one to two-step sedentary or light work that did not include exposure to

---

[1] Plaintiff had previously filed several applications for SSI and disability insurance benefits (DIB). She first applied in March 1994, alleging disability since February 1993. (Tr. 13.) Plaintiff requested a hearing; however, in the meantime, Public Law 104-121 was enacted prohibiting payment of SSI of DIB when alcoholism or drug addition was a material factor in the disability determination. In March 1997, administrative law judge Homer T. Ball, Jr. issued a decision finding that plaintiff was disabled, but that her alcohol and drug abuse was a material factor in the disability. (Tr. 683-90.) Plaintiff did not appeal. She filed a second application for SSI in September 1997, alleging disability since September 1, 1997; that claim was denied initially and plaintiff did not seek further review. (Tr. 14.) Plaintiff filed three more applications for SSI and one application for DIB prior to this one. (Tr. 14.) Each of those applications was denied initially and plaintiff did not seek further review. (Tr. 14.)

heights, moving machinery, industrial fumes, odors, dusts or gases.  The ALJ determined that plaintiff was able to perform her past work as a cashier or counter clerk.  The ALJ also found that plaintiff, being thirty-six, was a younger person, had a GED and had completed one year of vocational training at a business college.

Based on these findings, the ALJ concluded that plaintiff was not disabled. The decision of the ALJ became final when the Appeals Council denied plaintiff's request for a review on March 22, 2005. The plaintiff filed a timely appeal in this court on May 23, 2005.

II. Standard of Review

This court's review is limited to whether the Commissioner's decision to deny benefits to plaintiff is based on proper legal standards under 42 U.S.C. § 405(g) and supported by substantial evidence on the record as a whole.  See Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).  Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance, Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)).  The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

///

III. Discussion

In her motion for summary judgment plaintiff contends that the ALJ erred by failing to consider all of her impairments, rejecting the opinions of her treating sources without legitimate reasons; rejecting her subjective complaints as not credible; failing to properly address lay witness testimony; and by failing to include all of her limitations in the hypothetical posed to the vocational expert.

A. Failure to Consider All Impairments

Plaintiff's first claim is that the ALJ erred in failing to consider all of her impairments at step two of the disability determination. Plaintiff contends the ALJ improperly assessed the severity of her impairments and improperly excluded some of her impairments from his assessment.

An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. See Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). Impairments must be considered in combination in assessing severity. 20 C.F.R. § 404.1523.

Plaintiff argues the ALJ excluded impaired memory functions, impaired function of her left hand, grand mal seizure disorder, major depression and generalized epilepsy from consideration as a severe impairment. (Pl.'s Mot. Summ. J. at 22:3-6.) Although the burden is on plaintiff at step two of the sequential evaluation, see Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998), counsel for plaintiff has offered no meaningful argument in support of the claim that the ALJ erred at step two. A mere recitation of medical diagnoses and relevant legal standards

does not demonstrate how each of the conditions included in that recitation impacts plaintiff's ability to engage in basic work activities. Put another way, a medical diagnosis does not an impairment make. Moreover, the record shows that the ALJ did consider plaintiff's epilepsy (although he referred to it as seizure disorder instead of "grand mal seizure disorder" or "generalized epilepsy") and her depression. (Tr. 21.) He also considered her impaired function of her left hand stemming from a broken wrist and memory problems but found these to be non-severe impairments because they had only minimal impacts on her ability to work. (Tr. 21.)

In light of the record, the court finds that here was no error in the step two analysis, and recommends that the ALJ's findings be affirmed.

B. Opinion of Treating Physicians

Plaintiff argues that the ALJ rejected the opinion of her treating physicians, Robert A. Varady, M.D., Jack Kundin M.D., Albert Mitchell, M.D., Larry Dizmang, M.D., and Eric Bugna, M.D., without providing a legitimate basis for doing so. The opinion of a treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999). An ALJ may reject the uncontradicted opinion of a treating physician only for "clear and convincing" reasons. See Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995). When conflicting medical evidence is presented, however, the ALJ must resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Although the treating physician's opinion is given deference, the ALJ may reject it in favor of a contradicting opinion of an examining physician, providing the ALJ makes specific findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ may satisfy this requirement by setting out a summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

///

1    The court finds that the ALJ's interpretation of the medical evidence is supported
2 by substantial evidence included in his detailed factual findings.[2]
3    Dr. Varady was plaintiff's family physician during the relevant time period.  (Tr.
4 238, 531-567, 669-673.)  Dr. Varady's treatment notes reflect that plaintiff was treated for
5 nausea and vomiting, probably due to taking her medications in the morning.  (Tr. 538.)  In
6 February 2001, Dr. Varady noted that plaintiff's asthma was stable; that her levels of seizure
7 medicine should be checked; that she was having ongoing seizure care with Dr. Mitchell; that
8 her substance abuse recovery was going well; and that her back pain did not appear to be
9 problematic. (Tr. 337.) Dr. Varady also noted that plaintiff was trying to get pregnant.  (Tr. 537.)
10 Dr. Varady noted that plaintiff had a seizure recently and added Prednisone to her medications.
11 (Tr. 536.)  Dr. Varady saw plaintiff in July 2002 for a fracture of her left hand.  (Tr. 534.)  On
12 September 13, 2002, plaintiff's hand had been surgically repaired and she reported persistent
13 pain and limited range of motion.  (Tr. 533.)  Although plaintiff was doing physical therapy on
14 her own, Dr. Varady stated she would be referred to formal physical therapy if her improvement
15 halted.  (Tr. 533.)  In December 2000, (before the relevant time period for this action), Dr.
16 Varady prepared a letter describing plaintiff's treatment; he noted that her seizure disorder was
17 adequately, but not ideally controlled at this point.  (Tr. 238.)  He specifically noted that his hope
18 for the future was that her seizure disorder would be better improved and that "she would be able
19 to function on a more regular basis, including activities of daily living, gainful employment, etc."
20 (Tr. 238.)
21    Plaintiff was referred to Dr. Mitchell for treatment for her seizures.  Dr. Mitchell
22 noted in a letter to Dr. Varady dated June 2002 that plaintiff suffered from a long standing
23 seizure disorder and that her seizures had been better controlled lately, with only one or two

---

[2]At the onset, the court notes that the relevant time period for plaintiff's current SSI application is the period since January 1, 2001.  In her application, plaintiff claimed that her disability began on January 1, 2001.  (Tr. 62.)  The ALJ, however, considered plaintiff's medical history prior to 2001.  (Tr. 15-20.)

6

1  seizures per month. (Tr. 506.)  In a July 2002 letter, Dr. Mitchell noted that plaintiff had
2  suffered two seizures in the past week and fallen out of bed during one, breaking her wrist. (Tr.
3  505.)  Dr. Mitchell reported on August 26, 2002 that plaintiff's medication had increased
4  effectiveness in controlling her seizures. (Tr. 504.)  In December 2002, Dr. Mitchell reported
5  that plaintiff's medication regimen was very effective; her last two seizures had been as much as
6  a month apart. (Tr. 503.)  In an August 18, 2003 letter, Dr. Mitchell stated that plaintiff had
7  suffered two seizures recently, but, prior to this, she had been seizure free for months. (Tr. 501.)
8           Plaintiff was treated by Dr. Bugna on July 18, 2002 for a fractured wrist.  Dr.
9  Bugna noted that he discussed surgical treatment with plaintiff and that plaintiff had sustained a
10 severe injury. (Tr. 369.)  Dr. Bugna also discussed with plaintiff the potential for post-traumatic
11 degenerative joint disease. (Tr. 369.)  Because Dr. Bugna was out of the area, all surgical
12 follow-up was with Dr. John Koefed. (Tr. 369.)  The follow up with Dr. Koefed was
13 unremarkable.  Dr. Koefed offered physical therapy, but patient refused, stating she could do it
14 on her own. (Tr. 363.)
15          Dr. Dizmang treated plaintiff for her mental disorders. (Tr. 223.)  He assessed
16 plaintiff as having depression. (Tr. 223.)  Dr. Dizmang found her medication compliant and
17 noted that her depression was showing improvement. (Tr. 224, 225.)  Dr. Dizmang opined that
18 plaintiff's motor activity, speech and memory were normal, and her ability to concentrate and
19 her judgment were intact. (Tr. 223-224.)  He completed a questionnaire concerning plaintiff and
20 reported that she was doing reasonably well on her medications, but she did not handle stress
21 well and suffered from major depressive disorder, recurrent and severe. (Tr. 355.)  He noted that
22 plaintiff needed no assistance with her daily activities of living and her concentration and ability
23 to stay on task were normal. (Tr. 355.)  Dr. Dizmang opined that plaintiff had no major
24 problems with social functioning and that her mental status exam was "WNL" (within normal
25 limits). (Tr. 353.)  On March 21, 2003, plaintiff reported to Dr. Dizmang that she was doing
26 fairly well and that her seizures were almost under control and her depression was under control.

(Tr. 379.)

Plaintiff's argument that the ALJ failed to properly consider the opinions of her treating physicians is somewhat perplexing. The underlying record reflects that the ALJ did not discount any of the opinions of plaintiff's treating physicians. The ALJ adequately included the observations of plaintiff's treating physicians in his factual findings; noting that plaintiff's seizures were much better controlled after Dr. Mitchell adjusted her medications and that plaintiff had declined to seek physical therapy for her broken left wrist. (Tr. 14-21, 24.) The ALJ further noted that plaintiff's medical records indicated that plaintiff was able to maintain attention and concentration for simple one to two step tasks. (Tr. 21.).

In summary, the ALJ credited the opinions of plaintiff's treating physicians which are reflected in the record. See Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988.) Plaintiff makes much of the fact that the ALJ failed to mention the opinion of consulting physician Jack Kundin, M.D., who opined that plaintiff had a seizure disorder which was very poorly controlled by medication. (Pl.'s Mot. Summ. J. at 26:22-26.) This opinion, however, was offered in 1999, which is before the alleged onset date of January 1, 2001. Additionally, the records of plaintiff's treating physicians, Drs. Mitchell and Varady indicate that, by 2003, plaintiff's seizures were increasingly controlled through medication. (Tr. 24.) The court finds that the ALJ's conclusions are based on substantial evidence in the record and free of error. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). The court recommends that the ALJ's findings be affirmed.

C. Plaintiff's Credibility and Rejection of Lay Witness Testimony

Plaintiff challenges the ALJ's finding that her subjective complaints were only partially credible. An ALJ may reject subjective complaints if he provides specific reasons for explaining why a claimant's testimony was not credible. See Bunnell v. Sullivan, 947 F.2d 341, 345-346 (9th Cir. 1991). In determining whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. See id. at 344. Other factors include plaintiff's daily activities, prior inconsistent statements or inconsistent

testimony, unexplained or inadequately explained failure to seek treatment, and lack of supporting objective medical evidence. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

Here, the ALJ noted that the objective evidence did not support plaintiff's allegations of the severity of her disability. (Tr. 24.) He noted that plaintiff's testimony as to the frequency of her seizures was contradicted by the medical records from Dr. Mitchell. (Tr. 24.) Specifically, plaintiff testified that she had three to five seizures in the five months preceding the administrative hearing; however, her treatment records indicated that as of August 2003 plaintiff had only two seizures, but was previously seizure free for months and her primary physician, Dr. Varady reported that plaintiff's seizure disorder was clinically stable." (Tr. 24.); see Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(stating the ALJ may properly consider medical evaluations which discredit subjective complaints). The ALJ noted that a reviewing doctor noted that plaintiff exaggerated her symptoms. (Tr. 24); see Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ also noted that plaintiff was inconsistent in her testimony; she testified that she did not remember the last time she had worked, but when asked about her gas station jobs admitted to working two such jobs in 2001. (Tr. 24.); see Light, 119 F.3d at 792. The ALJ found that memory problems did not account for plaintiff's inability to testify correctly as to her work history. (Tr. 24.)

Plaintiff contends that in making a credibility determination, the ALJ should have considered the statements of her friend Tracy Epps. Ms. Epps filled out a daily activities questionnaire for plaintiff which stated that plaintiff had memory problems, had restricted daily activities and could not hold a job due to her seizure disorder. (Tr. 115-120.) Plaintiff contends that the ALJ erred by rejecting Ms. Epps's testimony without explanation or comment. (Pl.'s Mot. Summ. J. at 29: 22-24.)

An ALJ is required to consider lay witness testimony in certain types of cases. See Smolen, 80 F.3d at 1288. When a claimant alleges pain or other symptoms that are not

supported by the medical evidence in the file, the adjudicator shall obtain detailed descriptions of daily activities by directing specific inquiries about pain and its effect to third parties who would be likely to have such knowledge. See id.  In Smolen, plaintiff's alleged disability was based on fatigue and pain. See id.  Her medical records were sparse and did not provide adequate documentation of her symptoms. See id.  Her friends and family members testified on her behalf at her hearing, and the ALJ rejected their testimony. See id.

However, the Ninth Circuit has noted that an ALJ "need not discuss all evidence presented.  Rather, [he] must explain why 'significant probative evidence has been rejected.'" See Vincent on Behalf of Vincent v. Hecker, 739 F.2d 1393, 1394-1395 (9th Cir. 1984)(emphasis in original)(internal citations omitted).  In Vincent, the Ninth Circuit held that failure to discuss lay testimony did not require reversal. See id. at 1395.

Here, Ms. Epps filled out a "daily activities questionnaire." (Tr. 115.)  The questionnaire was filled out in March of 2002. (Tr. 120.)  Most of Ms. Epps's answers were not detailed responses; for example, in response to the question "does the applicant exhibit any unusual behavior or fears" Ms. Epps responded "I really think she is scared to go outside her apartment." (Tr. 115-120.)  Ms. Epps provided little justification for her responses. (Tr. 115-120.)

Plaintiff's case differs from that described in Smolen in two ways.  First, her friend, Ms. Epps did not appear in person to testify, instead filled out a questionnaire two years before the administrative hearing.  Next, Plaintiff's symptoms were adequately documented in the records.  The problem was that plaintiff's statements to the ALJ contradicted her statements to her treating physicians and contradicted what was reflected in medical notes.  For example, Plaintiff told Dr. Mitchell in August 2003 that, prior to the two seizures she had just experienced recently, she had been seizure free for months and the notes of her treating physician reflect that in April 2004 her seizure condition was clinically stable. (Tr. 501, 669.)  Conversely, plaintiff testified on April 26, 2004 that she had one seizure a month for approximately eight months.

(Tr. 723.)

While the ALJ perhaps should have discussed the questionnaire filled out by Ms. Epps, the court finds that this omission does not require remand. The questionnaire contained very short responses to form questions and plaintiff's symptoms were adequately developed in the medical records.

The court finds that the ALJ gave clear and convincing reasons for his credibility determination and that his credibility determination is supported by substantial evidence in the record. See Bunnell, 947 F.2d at 346. The court recommends that the ALJ's credibility findings be affirmed.

### D.  Failure to Include all Limitations in the Hypothetical

Plaintiff's final argument is that the ALJ erred by failing to include limitations from grand mal seizures, major depressive disorder, limited use of the left hand and a severe asthmatic condition in the hypothetical question posed to the vocational expert. An ALJ may rely on vocation expert testimony when it is based on a hypothetical question that accurately reflects the claimant's limitations. See Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001). If the restrictions assessed by the ALJ are supported by substantial evidence, he may properly rely on the vocational expert's testimony. See id..

Here, the ALJ proposed the following hypothetical:

> An individual of claimant's age, education, and past work experience. Assume I find her capable of performing the exertional demands of light and sedentary work with the following limitations. No working at heights or with moving machinery. No exposure to industrial dust, chemicals, or fumes. But by that I mean that a work environment where there's no manufacturing process that generates those things is okay. But if it—if chemicals, dust fumes are generated on site other than just normal—dust that's not okay. And I want to ask you to identify only unskilled work....

(Tr. 757.) The restrictions assessed by the ALJ are supported by substantial evidence. The ALJ properly considered plaintiff's seizure disorder by limiting her to no heights and not around moving machinery. He properly considered her asthma by limiting her to work with no

chemicals, dust, or fumes. Although he found her depressive disorder to be severe, the treatment records reflect that plaintiff had no limitations from this symptom. (Tr. 355.) As discussed previously, the ALJ did not err when he found plaintiff's hand injury to be non-severe. Accordingly, it was not an error to fail to include hand limitations in the hypothetical. See Osenbrock, 240 F.3d at 1163. The court finds that the ALJ's determination is supported by substantial evidence in the record. See Bunnell, 947 F.2d at 346. The court recommends that the ALJ's findings be affirmed.

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment or remand be denied, and

2. The Commissioner's cross motion for summary judgment be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 7, 2006.

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE